UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------- X

IN RE SOUTH AFRICAN APARTHEID
LITIGATION

**OPINION & ORDER**

02 MDL 1499 (SAS)

------------------------------------------------------- X

**This Document Relates to:**

------------------------------------------------------- X

LUNGISILE NTSEBEZA, *et al.*,

        **Plaintiffs,**

   - against -

DAIMLER AG, *et al.*,

        **Defendants.**

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5/27/09

02 Civ. 4712 (SAS)
02 Civ. 6218 (SAS)
03 Civ. 1024 (SAS)

------------------------------------------------------- X

SAKEWE BALINTULO, *et al.*,

        **Plaintiffs,**

   - against -

DAIMLER AG, *et al.*,

        **Defendants.**

03 Civ. 4524 (SAS)

------------------------------------------------------- X

1

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.   INTRODUCTION AND BACKGROUND

Two actions brought on behalf of massive classes of South Africans ("plaintiffs") assert that several multinational corporations ("defendants") aided and abetted torts in violation of customary international law. Plaintiffs claim jurisdiction in United States courts under the Alien Tort Claims Act ("ATCA").[1] These lawsuits address the obligations of corporations under the law of nations, the role of American courts in enforcing universal norms of international law, and the legacy of South African apartheid.

The tortuous procedural history of these cases dates back to the filing of complaints in 2002. On November 29, 2004, Judge John E. Sprizzo granted defendants' motion to dismiss on the ground that aiding and abetting liability is not available under the ATCA.[2] Plaintiffs appealed to the Second Circuit, and on

---

[1]   28 U.S.C. § 1350. This provision is alternatively known as the Alien Tort Statute ("ATS").

[2]   *See In re S. Afr. Apartheid Litig.*, 346 F. Supp. 2d 538 (S.D.N.Y. 2004), *rev'd sub nom.*, *Khulumani v. Barclay Nat'l Bank Ltd.*, 504 F.3d 254 (2d Cir. 2007) (per curiam). Judge Sprizzo additionally dismissed the *Ntsebeza* plaintiffs' non-ATCA claims under the Torture Victim Protection Act, 28 U.S.C. § 1350, and the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(b)-(d). *See id.* at 555-57.

October 12, 2007 the Circuit affirmed in part and reversed in part.[3] Relevant to this motion, the Circuit's decision in *Khulumani v. Barclays National Bank Ltd.* found that aiding and abetting liability is available under the ATCA and vacated the lower court's holding that prudential concerns warranted dismissal.[4] The short per curiam opinion did not address the *mens rea* standard for an aiding and abetting claim or the standard for vicarious liability when a domestic corporation allegedly uses its foreign subsidiary as an agent.[5]

On April 8, 2009, this Court granted in part and denied in part defendants' consolidated motion to dismiss these actions in their entirety.[6] Defendants now move to certify that opinion for interlocutory appeal pursuant to Section 1292(b) of Title 28 of the United States Code. Defendants specifically

---

[3] *See Khulumani v. Barclays Nat'l Bank Ltd.*, 504 F.3d 254 (2d Cir. 2007) (per curiam).

[4] *See id.* at 261-64. The Circuit expressly noted that if plaintiffs narrowed their allegations upon remand, the calculus concerning comity and the political question doctrine could change significantly. *See id.* at 263.

[5] Each member of the panel authored a lengthy separate opinion concurring or dissenting in the judgment. Each offered a separate analysis concerning *mens rea*, *see id.* at 275-77 (Katzmann, J., concurring); *id.* at 288-90 (Hall, J., concurring); *id.* at 318, 331-33 (Korman, J., concurring in part and dissenting in part), but none addressed the relevant vicarious liability standard.

[6] *See In re S. Afr. Apartheid Litig.*, No. 02 MDL 1499, 2009 WL 960078 (S.D.N.Y. Apr. 8, 2009). For the purpose of this decision, the Court presumes familiarity with the April 8 Opinion.

request certification of three issues: case-specific deference, the *mens rea* requirement for the tort of aiding and abetting a crime under the law of nations, and the vicarious liability standard under federal common law applicable when the alleged agent is the foreign subsidiary of the alleged principal. In addition, defendants request a stay of the proceedings during the pendency of that appeal. For the reasons that follow, defendants' motion is denied.

## II. APPLICABLE LAW

Appeals of interlocutory district court orders are governed by 28 U.S.C. § 1292(b). Under section 1292(b), the order being appealed must "(1) involve a controlling question of law (2) over which there is substantial ground for difference of opinion," and the movant must also show that "(3) an immediate appeal would materially advance the ultimate termination of the litigation."[7] In addition, leave to appeal is warranted only when the movant demonstrates the existence of "exceptional circumstances"[8] sufficient to overcome the "general aversion to piecemeal litigation"[9] and to "justify a departure from the basic policy

---

[7] 28 U.S.C. § 1292(b).

[8] *Williston v. Eggleston*, 410 F. Supp. 2d 274, 276 (S.D.N.Y. 2006).

[9] *In re AroChem Corp.*, 176 F.3d 610, 619 (2d Cir. 1999). *Accord Ted Lapidus, S.A. v. Vann*, 112 F.3d 91, 95 (2d Cir. 1997) (describing the "salutary policies that animate the final judgment rule").

of postponing appellate review until after the entry of a final judgment."[10] "In practice the courts treat the statutory criteria as a unitary requirement, and the decisions granting and discussing interlocutory appeals under [section] 1292(b) uniformly cite all three of the elements as being present in any particular case."[11] Interlocutory appeal "is limited to 'extraordinary cases where appellate review might avoid protracted and expensive litigation,' . . . and is not intended as a vehicle to provide early review of difficult rulings in hard cases."[12] The decision whether to grant an interlocutory appeal from a district court order lies within the district court's discretion.[13] Certification of an interlocutory appeal does "not stay proceedings in the district court unless the district judge or the Court of Appeals or

---

[10] *In re Flor*, 79 F.3d 281, 284 (2d Cir. 1996) (quotation marks and citations omitted).

[11] *Estevez-Yalcin v. The Children's Village*, No. 01 Civ. 8784, 2006 WL 3420833, at *1 (S.D.N.Y. Nov. 27, 2006) (quotation marks and citation omitted).

[12] *In re Levine*, No. 03 Civ. 7146, 2004 WL 764709, at *2 (S.D.N.Y. Apr. 9, 2004) (quoting *German v. Federal Home Loan Mortgage Corp.*, 896 F. Supp. 1385, 1398 (S.D.N.Y. 1995)).

[13] *See, e.g., Swint v. Chambers County Comm'n*, 514 U.S. 35, 47 (1995) ("[D]istrict courts [have] first line discretion to allow interlocutory appeals."); *DM Rothman Co., Inc. v. Cohen Mktg. Int'l, Inc.*, No. 98 Civ. 7905, 2006 WL 2128064, at *1 (S.D.N.Y. July 27, 2006) ("[T]he determination of whether § 1292(b) certification is appropriate under these standards lies with the discretion of the district court." (quoting *Certain Underwriters at Lloyd's, London v. ABB Lummus Global, Inc.*, No. 03 Civ. 7248, 2004 WL 1286806, at *6 (S.D.N.Y. June 10, 2004))).

a judge thereof" orders a stay.[14]

## III. DISCUSSION

### A. Case-Specific Deference

Defendants first request certification of an interlocutory appeal concerning the application of case-specific deference to this case. Defendants argue that case-specific deference is distinct from the political question and international comity doctrines. Defendants further argue that unlike the latter doctrines, case-specific deference *requires* federal courts to decline to exercise jurisdiction over ATCA cases whenever foreign and United States Governments assert that the lawsuit conflicts with their foreign policy interests without analyzing the validity of those assertions.[15] This argument fails because defendants do not raise a controlling issue of law. Moreover, there is no substantial ground for disagreement, and an appeal would not materially advance the litigation.

### 1. Controlling Issue of Law

With the exception of a misstatement discussed below, defendants do

---

[14] 28 U.S.C. § 1292(b).

[15] *See* Defendants' Memorandum in Support of Motion to Certify the Court's April 8, 2009 Order for Interlocutory Appeal ("Def. Mem.") at 6.

not explain the contours of the free-standing case-specific deference doctrine they propose.[16] In fact, this Court declined to dismiss the actions largely because the Governments' litigation positions were predicated on the faulty *legal* assumption – to which no deference is due[17] – that these actions sought to hold defendants' liable for merely doing business in South Africa. Once this Court held that plaintiffs were required to show much more to obtain relief, there was no longer any conflict between maintaining these suits and the core foreign policy concerns expressed by both governments.[18] On this dispositive issue – which defendants do not contest in this motion – any reasonable form of case-specific deference would have yielded the same result as that reached under the framework of the political

---

[16] If defendants' argument that courts are required to defer to the Governments' views without conducting any independent analysis were correct, this issue would clearly involve a controlling issue of law. As discussed below, however, the argument is plainly incorrect, and there is no substantial ground for disagreement on the issue.

[17] *See Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 213 (1988).

[18] Defendants complain that the Court erred by holding that a suit should not be dismissed simply because it is in conflict with the Executive Branch's foreign policy views. This misstates the April 8 Opinion, which held that the Executive Branch's cursory *assertion* that this suit could cause a possible irritant in foreign relations did not require dismissal. *See In re S. Afr. Apartheid Litig.*, 2009 WL 960078, at *31.

question and international comity doctrines.[19] Thus, defendants' argument that case-specific deference should be analyzed separately does not raise a controlling issue of law.

## 2. Substantial Grounds for Disagreement

There is not a substantial ground for difference of opinion on whether (1) case-specific deference is appropriately analyzed under the political question and international comity doctrines, (2) case-specific deference requires absolute delegation, or (3) whether the Court correctly rejected the defendants' deference-based arguments.

*First*, in *Khulumani*, the Second Circuit noted that "the parties agree that *Sosa*[ *v. Alvarez-Machain*]'s reference to 'case-specific deference' implicates

---

[19] This Court also concluded that these actions, which seek relief from corporations that did not participate in the Truth and Reconciliation Commission's ("TRC") proceedings and that received no immunity from the Commission, did not conflict with the results or aims of the TRC, as the Commissioners themselves explained. Defendants further argue that these suits conflict with South Africa's "democratically approved mechanisms for handling the legacy of apartheid." Defendants' Reply Memorandum in Support of Motion to Certify the Court's April 8, 2009 Order for Interlocutory Appeal at 4. There is no such conflict with the TRC mechanisms. If defendants are suggesting that plaintiffs could have brought this suit in South African courts, defendants failed to raise such *forum non conveniens* or exhaustion arguments in their motion to dismiss and have now waived them. Further, it is far from clear whether these actions could have been brought in South African courts. Finally, the Governments' views related principally to the supposed conflict between these suits and the TRC's proceedings, not to broader, unexplained sovereignty concerns.

either the political question or international comity doctrine."[20] The Court explained that "[t]his policy of '[j]udicial deference to the Executive Branch on questions of foreign policy has long been established under the prudential justiciability doctrine known as the 'political question' doctrine.'"[21] In outlining the framework for analyzing "when, and to what extent, . . . the stated foreign policy interests of the United States [should] be accorded deference," the Circuit reiterated that courts "should be guided in this determination by 'our application of the political question doctrine.'"[22] Thus there is not substantial ground for disagreement concerning this Court's application of the political question and international comity doctrines to determine whether to dismiss these actions in deference to the stated policy concerns of the United States and South African Governments.

---

[20] *Khulumani*, 504 F.3d at 262 n.10.

[21] *Id.* at 261 (quoting *Whiteman v. Dorotheum GmbH & Co. KG*, 431 F.3d 57, 69 (2d Cir. 2005)).

[22] *Id.* at 263 (quoting *Whiteman*, 431 F.3d at 69, 71). In outlining the contours of case-specific deference, the Supreme Court's decision in *Sosa v. Alvarez-Macahin* cited only one case, which concerned deference to the Executive Branch under the Foreign Sovereign Immunities Act ("FSIA"). *See* 542 U.S. 692, 733 n.21 (2004) (citing *Republic of Austria v. Altmann*, 541 U.S. 677 (2004)). As *Khulumani* emphasized, the leading Second Circuit decision analyzing case-specific deference under the FSIA explicitly applied the framework of the political question doctrine. *See* 504 F.3d at 263 (discussing *Whiteman*, 431 F.3d at 67-71).

*Second*, defendants' suggestion that this Court should have deferred to the Executive's and South Africa's views without analysis vastly exaggerates the level of deference that is due.[23] *Sosa* states that "there is a strong argument that federal courts should give serious weight to the Executive Branch's view of the case's impact on foreign policy,"[24] but serious weight is a far cry from absolute deference. Further, in the only case to which *Sosa* referred in explaining the scope of case-specific deference, the Supreme Court emphasized that, although the Executive's views merit "greater consideration," it would be error to treat these views as dispositive.[25] Finally, *Khulumani* stated that "to give dispositive weight to the Executive Branch's views would likely raise serious separation-of-powers concerns" and emphasized that deference should not be "dispositive."[26] There is

---

[23] *See* Def. Mem. at 6 ("If, as here, the South African and United States Governments state that this lawsuit is contrary to their foreign policy interests, *it is not the place of the judiciary to parse that rationale to assess the validity of that assertion.* To do so would be to draw the judiciary into the very foreign policy affairs and diplomatic issues that it is, by structure and design, least capable of addressing." (emphasis added)).

[24] *Sosa*, 542 U.S. at 733 n.21.

[25] *See Altmann*, 541 U.S. at 702 n.23 ("We do not hold . . . that executive intervention could or would trump considered application of the FSIA's more neutral principles; we merely note that the Executive's views on questions within its area of expertise merit *greater deference* than its opinions regarding the scope of a congressional enactment." (emphasis added)).

[26] 504 F.3d at 263 & n.14.

no substantial ground for difference of opinion on this point.

*Third*, as discussed above, this Court declined to dismiss these cases in deference to the Governments' views because the Governments misunderstood the nature of these actions. Once the proper legal standards are applied, there is no conflict between this case and the TRC's proceedings. There is no substantial ground for disagreement on this point.[27]

### 3. Material Advancement of the Litigation

For the reasons stated above, an appeal in this matter would likely not materially advance this litigation. Further, it is important to note that these actions have been pending for seven years without any discovery and that most of the conduct at issue in this litigation occurred over 20 years ago. As memories fade

---

[27] Defendants additionally argue – for the *first time* in this motion – that dismissal was appropriate under a separate line of cases relating to foreign affairs preemption. It is inappropriate to certify for interlocutory appeal an issue that was not briefed in the original motion. Further, defendants' argument is without merit: at most, foreign affairs preemption precludes courts from adjudicating matters that fall exclusively within the Executive's foreign affairs powers, such as "disparag[ing] certain foreign regimes," or from issuing judgments that are in direct "conflict with express foreign policy of the National Government." *American Ins. Ass'n v. Garamendi*, 539 U.S. 396, 417, 420 (2003). This Court will not be required to pass judgment on any foreign policy decisions of the United States. Nor will this Court be required to disparage any foreign state, as the apartheid South African Government no longer exists. The only issues in dispute in this litigation relate to the scope of corporate involvement in apartheid human rights violations, and it is uncontested that the apartheid South African Government regularly committed such abuses.

and relevant actors pass away, discovery becomes more difficult and plaintiffs lose their chance for relief. In these extraordinary circumstances, I would exercise my discretion not to certify this appeal even if the statutory grounds were met. Therefore, certification for an interlocutory appeal concerning case-specific deference is denied.

**B.    *Mens Rea***

Defendants next request certification for interlocutory appeal of the determination of the *mens rea* requirement to be applied to the tort of aiding and abetting a crime under the law of nations. Defendants argue that the proper standard for an aiding and abetting claim under the law of nations is intent or shared purrpose.[28] This issue does involve a controlling question of law. Moreover – as the division of opinion among members of the *Khulumani* panel indicates – there is substantial ground for difference of opinion concerning the proper standard. However, an immediate appeal would not materially advance the ultimate termination of the litigation.

This Court lacks defendants' certainty that "reversal of the district

---

[28]    *See* Def. Mem. at 9.

court's order [on the *mens rea* issue] would terminate the action."[29] Plaintiffs have advanced numerous allegations evincing specific intent, particularly concerning the automotive defendants.[30] Even if the Second Circuit or the Supreme Court were to determine that intent or shared purpose is the proper *mens rea* requirement, plaintiffs would undoubtedly fight on. As an immediate appeal would not materially advance the ultimate termination of the litigation, certification for an interlocutory appeal concerning the proper *mens rea* standard for an aiding and abetting claim under the law of nations is denied.

## C.  Vicarious Liability

Defendants last request certification for interlocutory review of the standard applied by this Court for vicarious liability under federal common law when the alleged agent is the foreign subsidiary of the alleged principal. The proper agency standard is a controlling question of law, but there is not substantial ground for difference of opinion concerning the proper standard. Defendants

---

[29] *Id.* at 8-9 (quoting *Transport Workers Union of Am. v. New York City Trnsit Auth.*, 358 F. Supp. 2d 347, 352 (S.D.N.Y. 2005) (alteration in original).

[30] *See, e.g., Ntsebeza* Complaint ¶¶ 56-58, 61, 89-91, 110, 119-122, 02 MDL 1499, Docket No. 126 (S.D.N.Y. Oct. 27, 2008) (describing the provision of information about anti-apartheid activists to the South African Security Forces, direct facilitation of arrests, provision of information to be used by interrogators, and even participation in interrogations).

advocate use of the standard for piercing of the corporate veil as the test for vicarious liability between two related corporations.[31] However – as outlined in today's decision denying reconsideration of the denial of defendants' motion to dismiss[32] – neither precedent nor logic supports blurring the distinction between these two independent doctrines.[33] A corporate parent does not receive special protection from vicarious liability simply because it chooses its subsidiary to act as its agent.[34] Therefore, certification of an interlocutory appeal concerning the proper standard for vicarious liability is denied.

### D. Stay Pending Appeal

As this Court has denied certification of an interlocutory appeal, there is no need to stay this action. Therefore, defendants' request for a stay is denied.

## IV. CONCLUSION

For the foregoing reasons, defendants' motion for certification of an

---

[31] *See* Def. Mem. at 10.

[32] *See In re South African Apartheid Litig.*, No. 02 MDL 1499, slip op. at 13-15 (S.D.N.Y. May 27, 2009).

[33] *See First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611, 629 (1983) (distinguishing an alter ego claim from a vicarious liability claim).

[34] *See Royal Indus. Ltd. v. Kraft Foods, Inc.*, 926 F. Supp. 407, 413 (S.D.N.Y. 1996).

interlocutory appeal is denied. The Clerk of the Court is ordered to close this motion (02 MDL 1499, No. 145; 02 Civ. 4712, No. 96; 02 Civ. 6218, No. 140; 03 Civ. 1024, No. 21; and 03 Civ. 4524, No. 64).

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:    New York, New York
          May 27, 2009

- **Appearances** -

### For Plaintiffs Ntsebeza *et al.*:

Jay J. Rice, Esq.
Diane E. Sammons, Esq.
Nagel Rice LLP
103 Eisenhower Parkway
Roseland, New Jersey 07068
(973) 618-0400

Tyler R. Giannini, Esq.
Susan H. Farbstein, Esq.
International Human Rights Clinic
Harvard Law School
Pound Hall Room 401
1563 Massachusetts Avenue
Cambridge, Massachusetts 02138
(617) 495-9362

Helen I. Zeldes, Esq.
Zeldes & Haeggquist, LLP
655 West Broadway, Suite 1410
San Diego, California 92101
(619) 995-8218

Paul L. Hoffman, Esq.
Schonbrun DeSimone Seplow Harris
  & Hoffman
723 Ocean Front Walk
Venice, California 90291
(310) 396-0731

Judith Brown Chomsky, Esq.
Law Offices of Judith Brown
  Chomsky
Post Office Box 29726
Elkins Park, PA 19027
(215) 782-8367

**For Plaintiffs Balintulo *et al.*:**

Michael D. Hausfeld, Esq.
Hausfeld LLP
1700 K Street, NW, Suite 650
Washington, DC 20006
(202) 579-1089

Steig D. Olson, Esq.
Hausfeld LLP
11 Broadway, Suite 615
New York, New York 10004
(212) 830-9850

Matt Schultz, Esq.
Levin Papantonio Thomas Mitchell
    Echsner & Proctor, P.A.
316 South Baylen Street, Suite 600
Pensacola, Florida 32502
(850) 435-7140

Robert G. Kerrigan, Esq.
Kerrigan, Estess, Rankin & McLeod,
    LLP
627 East Government Street
Pensacola, Florida 32502
(850) 444-4402

**For Defendant International Business Machines Corp.:**

Keith R. Hummel, Esq.
Cravath, Swaine & Moore LLP
825 Eighth Avenue
New York, New York 10019
(212) 474-1000

**For Defendant General Motors Corp.:**

Jayant W. Tambe, Esq.
Robert S. Walker, Esq.
Jones Day
222 East 41st Street
New York, New York 10017
(212) 326-3939

**For Defendant Fujitsu Limited:**

Mark D. McPherson, Esq.
Michael Gerard, Esq.
Morrison & Foerster LLP
1290 Avenue of the Americas
New York, New York 10104
(212) 468-8000

**For Defendant Ford Motor Company:**

John H. Beisner, Esq.
O'Melveny & Myers LLP
1625 I Street, NW
Washington, DC 20006
(202) 383-5300

**For Defendant Daimler A.G.:**

Jerome S. Hirsch, Esq.
Susan L. Saltzstein, Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
Four Times Square
New York, New York 10036
(212) 735-3000