UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------- X

IN RE SOUTH AFRICAN APARTHEID
LITIGATION

------------------------------------------------- X

This Document Relates to:

------------------------------------------------- X

LUNGISILE NTSEBEZA, *et al.*,

        Plaintiffs,

    - against -

DAIMLER AG, *et al.*,

        Defendants.

------------------------------------------------- X

SAKEWE BALINTULO, *et al.*,

        Plaintiffs,

    - against -

DAIMLER AG, *et al.*,

        Defendants.

------------------------------------------------- X

ORIGINAL

- 37580

**OPINION & ORDER**

**02 MDL 1499 (SAS)**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED #: 5/27/09

**02 Civ. 4712 (SAS)**
**02 Civ. 6218 (SAS)**
**03 Civ. 1024 (SAS)**

**03 Civ. 4524 (SAS)**

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.   INTRODUCTION AND BACKGROUND

Two actions brought on behalf of massive classes of South Africans ("plaintiffs") assert that several multinational corporations ("defendants") aided and abetted torts in violation of customary international law.  Plaintiffs claim jurisdiction in United States courts under the Alien Tort Claims Act ("ATCA").[1] These lawsuits address the obligations of corporations under the law of nations, the role of American courts in enforcing universal norms of international law, and the legacy of South African apartheid.

On April 8, 2009, this Court granted in part and denied in part defendants' consolidated motion to dismiss these actions in their entirety.[2] Defendants now move for reconsideration of two aspects of that decision.  *First*, defendants request that this Court reconsider its determination that knowledge – rather than intent – is the *mens rea* requirement for an aiding and abetting claim under the law of nations.  *Second*, defendants request that this Court reconsider its

---

[1]      28 U.S.C. § 1350.  This provision is alternatively known as the Alien Tort Statute ("ATS").

[2]      *See In re South African Apartheid Litig.*, No. 02 MDL 1499, 2009 WL 960078 (S.D.N.Y. Apr. 8, 2009).  For the purpose of this decision, the Court presumes familiarity with the April 8 decision.

1

holding that some plaintiffs had advanced sufficient allegations to state claims

against defendants under a theory of vicarious liability.  Defendants argue that

vicarious liability cannot be applied to an ATCA claim or – in the alternative –

that the standard for vicarious liability between a parent company and a subsidiary

is the same as the standard for piercing the corporate veil.  Plaintiffs also claim

that plaintiffs' allegations are insufficient to establish a plausible claim under the

Supreme Court's recent decision in *Bell Atlantic Corp. v. Twombly*.[3]  For the

reasons that follow, defendants' motion for reconsideration is denied.

## II.    APPLICABLE LAW

### A.    Motion for Reconsideration

A motion for reconsideration is governed by Local Rule 6.3 and is

appropriate where "'the moving party can point to controlling decisions or data

that the court overlooked – matters, in other words, that might reasonably be

expected to alter the conclusion reached by the court.'"[4]  "A motion for

reconsideration may also be granted to 'correct a clear error or prevent manifest

---

[3]       550 U.S. 544 (2007).

[4]       *In re BDC 56 LLC*, 330 F.3d 111, 123 (2d Cir. 2003) (quotation omitted).

2

injustice.'"[5]

The purpose of Local Rule 6.3 is to "'ensure the finality of decisions and to prevent the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters.'"[6] Local Rule 6.3 must be "narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the Court."[7] Courts have repeatedly been forced to warn counsel that such motions should not be made reflexively, to reargue "'those issues already considered when a party does not like the way the original motion was resolved.'"[8]

---

[5] *In re Terrorist Attacks on September 11, 2001*, No. 03 MDL 1570, 2006 WL 708149, at *1 (S.D.N.Y. Mar. 20, 2006) (quoting *Doe v. New York City Dep't of Soc. Servs.*, 709 F.2d 782, 789 (2d Cir. 1983)).

[6] *Naiman v. New York Univ. Hosps. Ctr.*, No. 95 Civ. 6469, 2005 WL 926904, at *1 (S.D.N.Y. Apr. 1, 2005) (quoting *Carolco Pictures, Inc. v. Sirota*, 700 F. Supp. 169, 170 (S.D.N.Y. 1988)). *Accord Commerce Funding Corp. v. Comprehensive Habilitation Servs., Inc.*, 233 F.R.D. 355, 361 (S.D.N.Y. 2005) ("[A] movant may not raise on a motion for reconsideration any matter that it did not raise previously to the court on the underlying motion sought to be reconsidered.").

[7] *DGM Invs., Inc. v. New York Futures Exch., Inc.*, 288 F. Supp. 2d 519, 523 (S.D.N.Y. 2003) (quotation omitted). *Accord Shrader v. CSX Transp. Inc.*, 70 F.3d 255, 257 (2d Cir. 1995) (holding that a court will deny the motion when the movant "seeks solely to relitigate an issue already decided").

[8] *Joseph v. Manhattan & Bronx Surface Transit Operating Auth.*, No. 96 Civ. 9015, 2006 WL 721862, at *2 (S.D.N.Y. Mar. 22, 2006) (quoting *In re Houbigant, Inc.*, 914 F. Supp. 997, 1001 (S.D.N.Y. 1996)).

## B.   Causes of Action Under ATCA

The ATCA "enable[s] federal courts to hear claims in a very limited

category defined by the law of nations."[9]  Aiding and abetting a violation of

international law constitutes an independent cause of action under the ATCA.[10]  A

court must recognize the elements of an ATCA claim from accepted, specific,

international legal materials;[11] in the presence of a substantial conflict in authority,

this Court must set the requirement at a level where all major sources of customary

international law would "authorize the imposition of such liability."[12]  On the

other hand, "The law of nations . . . leaves to each nation the task of defining the

remedies that are available for international law violations."[13]

---

[9]      *Sosa v. Alvarez-Machain*, 542 U.S. 692, 712 (2004).

[10]     *See Khulumani v. Barclays Nat'l Bank Ltd.*, 504 F.3d 254, 260 (2d
Cir. 2007).  *See also id.* at 268 (Katzmann, J., concurring) (noting that aiding and
abetting is an independent violation of the law of nations).

[11]     *See Sosa*, 542 U.S. at 729 (noting that the judicial act is
"recognition," not common-law rulemaking);  *Abdullahi v. Pfizer, Inc.*, 562 F.3d
163, Nos. 05 Civ. 4863, 05 Civ. 6768, 2009 WL 214649, at *6 (2d Cir. Jan. 30,
2009) (laying out the requirements for recognition of a cause of action under the
ATCA).

[12]     *Khulumani*, 504 F.3d at 277 (Katzmann, J., concurring).

[13]     *Kadic v. Karadžić*, 70 F.3d 232, 246 (2d Cir. 1995).

4

## C.    Federal Common Law of Agency

"It is well established that traditional vicarious liability rules

ordinarily make principals or employers vicariously liable for acts of their agents

. . . in the scope of their authority."[14]   "[A] parent corporation is not liable for acts

of its subsidiaries simply because it owns the subsidiary's stock."[15]  Under federal

common law,

> the relationship of principal and agent does not obtain
> unless the parent has manifested its desire for the
> subsidiary to act upon the parent's behalf, the subsidiary
> has consented so to act, the parent has the right to exercise
> control over the subsidiary with respect to matters
> entrusted to the subsidiary, and the parent exercises its
> control in a manner more direct than by voting a majority
> of the stock in the subsidiary or making appointments to
> the subsidiary's Board of Directors.[16]

In contrast, piercing of the corporate veil requires a multi-factor analysis,[17] and

---

[14]     *Meyer v. Holley*, 537 U.S. 280, 285 (2003).

[15]     Restatement (Third) of Agency § 1.01 cmt. f(2) (citing *United States v. Bestfoods*, 524 U.S. 51, 62 (1998)).

[16]     *Transamerica Leasing, Inc. v. Republica de Venezuela*, 200 F.3d 843, 849 (D.C. Cir. 2000) (citing Restatement (Second) of Agency § 1).

[17]     *See MAG Portfolio Consultant, GmbH v. Merlin Biomed Group LLC*, 268 F.3d 58, 63 (2d Cir. 2001) (quoting *Freeman v. Complex Computing Co.*, 119 F.3d 1044, 1053 (2d Cir. 1997)) (enumerating ten factors).

tends to occur when there is "actual domination" of a subsidiary in its entirety.[18]

"[J]ust as one corporation can hire another to act as its agent, a parent can commission its subsidiary to do the same. If such an agency arrangement is alleged, then the plaintiff should not have to also allege domination and intent to defraud for the claim to survive."[19]

## III.   DISCUSSION

### A.   *Mens Rea* Standard

This Court engaged in an in-depth and painstaking legal analysis to determine the proper *mens rea* standard for an aiding and abetting claim under customary international law.  In their motion for reconsideration, defendants have identified neither controlling decisions nor facts that this Court neglected to consider or to follow.  On that basis alone, defendants' motion for reconsideration

---

[18]     *De Jesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 70 (2d Cir. 1996) (quoting *Williams v. McAllister Bros. Inc.*, 534 F.2d 19, 22 (2d Cir. 1976)).

[19]     *Royal Indus. Ltd. v. Kraft Foods, Inc.*, 926 F. Supp. 407, 413 (S.D.N.Y. 1996).  *Accord Bowoto v. Chevron*, 312 F. Supp. 2d 1229, 1238 (N.D. Cal. 2004) ("A parent company can be held vicariously liable for the acts of a subsidiary corporation if an agency relationship exists between the parent and the subsidiary."); *Wiwa v. Royal Dutch Petroleum Co.*, No. 96 Civ. 8386, 2002 WL 319887, at *13 n.14 (S.D.N.Y. Feb. 28, 2002).  Although *Royal Industries* applied New York law, 926 F. Supp. at 412 n.6, similar logic is found in federal common law.  *See First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba* ("*Bancec*"), 462 U.S. 611, 629 (1983) (distinguishing an alter ego claim from a vicarious liability claim).

6

is denied with regard to this Court's determination of the *mens rea* standard. That said – because of the importance of this litigation – I will briefly address defendants' arguments.

In response to the April 8 decision, defendants have shifted the emphasis of their prior motion. This Court has imposed a "lowest-common-denominator approach" to liability under the law of nations, in order to cabin the role of American Courts under the ATCA to law enforcement, rather than law making.[20]  Defendants now focus exclusively on the Rome Statute of the International Criminal Court, which this Court recognized presents "the most difficult question concerning the universality of the knowledge standard for aiding and abetting under customary international law."[21]  Article 25(c) of the Rome Statute creates criminal liability against an individual who, "[f]or the *purpose* of facilitating the commission of such a crime, aids, abets or otherwise assists in its commission or its attempted commission, including providing the means for its commission."[22]

---

[20]     *In re South African Apartheid Litig.*, 2009 WL 960078, at *13.

[21]     *Id.* at *14.

[22]     Rome Statute of the International Criminal Court ("Rome Statute") art. 25(c), July 17, 1998, 2187 U.N.T.S. 90 (emphasis added).

7

As this Court previously noted, "the Rome Statute 'has yet to be
construed by the International Criminal Court' and that 'its precise contours and
the extent to which it may differ from customary international law thus remain
somewhat uncertain.'"[23] In light of both the ambiguity of the term "purpose" in
Article 25(c) and the treaty-specific definition of the word "intent" found in
Article 30, this Court interpreted the term "purpose" in conformity with the
knowledge standard found in pre-Rome Statute customary international law.[24]

Nevertheless, defendants argue that "Article 25(c)'s purpose
requirement was 'borrowed from Model Penal Code (MPC),'" and therefore must
be interpreted using American criminal law precedents.[25] Even granting this

---

[23]     *In re South African Apartheid Litig.*, 2009 WL 960078, at *14
(quoting *Khulumani*, 504 F.3d at 275-76 (Katzmann, J., concurring)). *Accord* Kai
Ambos, *General Principles of Criminal Law in the Rome Statute*, 10 Crim. Law
Forum 1, 11 (1999) ("It remains (still!) a task for future jurisprudence or scholarly
writing to develop more concrete guidelines regarding the minimum requirements
for complicity.").

[24]     *See In re South African Apartheid Litig.*, 2009 WL 960078, at *14.

[25]     Memorandum in Support of Defendants' Motion for Reconsideration
("Def. Mem.") at 3 (quoting Ambos, *supra*, at 10). *Cf. 14 Penn Plaza LLC v.
Pyett*, 129 S. Ct. 1456, 1478 (2009) ("The 'interpretation of Title VII [of the Civil
Rights Act of 1964] . . . applies with equal force in the context of age
discrimination, for the substantive provisions of the [Age Discrimination in
Employment Act] were derived *in haec verba* from Title VII . . . ." (quoting *Trans
World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985))).

8

premise for the sake of argument, such direct borrowing would not change the outcome of this Court's decision.  If Article 25(c) was taken directly from the MPC – rather than customary international law – then Article 25(c) is not a statement of customary international law.  In effect, defendants would render Article 25(c) *lex specialis*, law particular to the International Criminal Court.[26] The Rome Statute established a unique tribunal under a specified mandate; it did not codify the law of nations.[27]  Therefore, the deliberate adoption of principles drawn from outside of customary international law concerns the International Criminal Court alone; it does not reflect a collective decision of the signatories of the Rome Statute to alter well-established principles.[28]

------

[26]     *See In re South African Apartheid Litig.*, 2009 WL 960078, at *14 & n.176 (noting the inclusion of *lex specialis* in the Rome Statute).

[27]     Notably the United Nations International Law Commission exists for that particular purpose.  *See* Statute of the International Law Commission, art. 15, UN Doc. A/CN.4/4/Rev.2 (1982) (establishing a commission to promote "the more precise formulation and systematization of rules of international law in fields where there already has been extensive State practice, precedent and doctrine").

[28]     *Cf.* Ambros, *supra*, at 7 (noting that some aspects of the Rome Statute were crafted to maintain "the Court's jurisdictional focus").  The recognition that a portion of the Rome Statute constitutes *lex specialis* does not conflict with the general proposition that "[The Rome Statute] may . . . be taken 'by and large . . . as constituting an authoritative expression of the legal views of a great number of States.'" *Khulumani*, 504 F.3d at 276 (Katzmann, J., concurring) (quoting *Prosecutor v. Furundzija*, Case No. IT-95-17/1, Trial Chamber Judgment ¶ 277)).

Thus either Article 25(c) is ambiguous and is best interpreted to create a knowledge standard (as this Court previously held), or it should be interpreted using American legal precedents concerning American criminal law but is irrelevant to the analysis of customary international law. Therefore, this Court did not err in holding that an individual is liable for aiding and abetting under the law of nations if he or she *knows* that his or her acts will provide substantial assistance to a crime in violation of customary international law.

**B.    Agency**

Although defendants made specific arguments concerning piercing of the corporate veil in their motion to dismiss, they did not directly address plaintiffs' theory of vicarious liability.[29]  On that basis alone, defendants have waived any argument that plaintiffs' claims must be dismissed based on the

---

[29]    *See* Memorandum of Law in Support of Defendant General Motors Corporation's Motion to Dismiss at 2-3 (citing cases concerning piercing of the corporate veil); Memorandum of Law in Support of Defendants Fujitsu Ltd's and Barclays Bank PLC's Motion to Dismiss at 5 (same). *See also* Memorandum of Law in Support of IBM's Supplemental Motion to Dismiss at 1 (expressly relying on General Motors' "discussion of the relevant legal standard"); Memorandum of Law in Support of Defendant Ford Motor Company's Motion to Dismiss at 2 (same); Defendant Daimler AG's Supplemental Memorandum of Law in Support of Defendants' Joint Motion to Dismiss at 5-6 (same).  Although defendants raised arguments specific to vicarious liability in their reply memorandum, *see* Reply Memorandum in Support of Defendants' Motions to Dismiss at 38, arguments made for the first time in a reply brief are not properly before the Court. *See, e.g.*, *Coosemans Specialties, Inc. v. Gargiulo*, 485 F.3d 701, 708-09 (2d Cir. 2007).

10

absence of agency liability. Nor have defendants identified controlling decisions that this Court neglected to follow. Therefore defendants' motion for reconsideration is denied with regard to this Court's holdings concerning vicarious liability. Nevertheless, I will again briefly address defendants' arguments.

### 1.    Vicarious Liability Under ATCA

Defendants first argue that vicarious liability is unavailable under customary international law, necessitating dismissal of all claims. This Court previously found that vicarious liability is universally accepted as a component of customary international law, specifically pointing to the principle of command responsibility.[30] On the other hand, the Court recognized that the contours of vicarious civil liability have not been defined with specificity,[31] in other words with the "definite content" required for recognition of a cause of action under the Supreme Court's decision in *Sosa v. Alvarez-Machain*.[32] However, this does not

---

[30]    *See In re South African Apartheid Litig.*, 2009 WL 960078, at *21 (citing Control Council Law No. 10, art. II, *reprinted in* Telford Taylor, *Final Report to the Secretary of the Army on the Nuremberg War Crimes Trials Under Control Council Law No. 10*, at 251 (1949)). The Second Circuit has also previously applied agency analysis in an ATCA case. *See Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 95-96 (2d Cir. 2000).

[31]    *See In re South African Apartheid Litig.*, 2009 WL 960078, at *21.

[32]    542 U.S. at 732.

11

require that courts exercising ATCA jurisdiction decline to impose vicarious liability.

*Sosa* expressly applies its limitations to "accepting a cause of action."[33] Vicarious liability is not a cause of action; it is a principle for the distribution of civil liability for an independent tort. Although both prohibitory norms and liability-distributing rules influence incentives, the former bars conduct while the latter merely allocates responsibility. Thus a prohibitory norm contains a distinct moral element of universal condemnation,[34] and liability-distributing rules do not, as liability stems not from the use of an agent alone but from the use of an agent to accomplish an unlawful end. Thus this Court does not impermissibly expand its role under ATCA by resorting to federal common law to establish principles of vicarious liability, which are the means of domestic enforcement against those who violate internationally recognized torts.[35] Therefore, this Court will continue to apply vicarious liability to ATCA claims.

---

[33]    *Id.*

[34]    *Cf. id.* at 762 (Breyer, J., concurring) (describing international law as recognizing "certain universally condemned behavior").

[35]    Notably, if all aspects of domestic enforcement of the law of nations were required to reflect international rules, ATCA – a unique American statute – would be a nullity. This view has been firmly rejected. *See id.* at 729. (holding that international torts may be enforced via a domestic jurisdictional statute).

## 2.    Vicarious Liability Under Federal Common Law

Defendants next argue that heightened standards apply to a vicarious liability claim involving a parent company and a subsidiary.[36]  Specifically, defendants contend that when the alleged principal and agent are a corporation and its subsidiary, a court must apply the test for piercing of the corporate veil, rather than the ordinary test for vicarious liability.  This argument is unpersuasive. There is no basis to extend special protection against vicarious liability to a parent company that engages its subsidiary as its agent.

Defendants principally rely on the Supreme Court's decision in *First National City Bank v. Banco Para El Comercio Exterior de Cuba* ("*Bancec*"). However, *Bancec* addresses piercing of the corporate veil, rather than allegations of a principal/agent relationship.[37]  *Bancec* specifically distinguishes a prior case in which the Court had applied vicarious liability to a corporation and notes that piercing of the corporate veil constitutes a "'broader equitable principle.'"[38]   The

---

[36]    Defendants acknowledge that the standard they argue for is beyond "ordinary agency principles." Def. Mem. at 8.

[37]    *See, e.g.*, 462 U.S. at 623 (framing the dispute around "whether Bancec is an 'alter ego' or a 'mere instrumentality' of the Cuban Government").

[38]    *Id.* at 639 (quoting *Taylor v. Standard Gas Co.*, 306 U.S. 307, 322 (1939)).

13

Second Circuit cases cited by defendants similarly address the showing necessary to treat independent corporations as alter egos.[39] No decision binding this Court supports conflating the standards for alter ego claims and vicarious liability claims against corporate parents.[40]

Piercing of the corporate veil and vicarious liability are conceptually distinct. When a court determines that two companies are alter egos, they may be treated as one unit for all legal purposes. On the other hand, vicarious liability runs only in one direction – from agent to principal – and relates only to particular actions. The "presumption of separateness" that applies to a corporation and its subsidiary is reasonably applied to the alter ego inquiry.[41] On the other hand,

---

[39]    *See De Jesus*, 87 F.3d at 70 (addressing "'the showing of actual domination required *to pierce the corporate veil*.'" (quoting *Williams*, 534 F.2d at 22)) (emphasis added); *De Letelier v. Republic of Chile*, 748 F.2d 790, 795 (2d Cir. 1984) (assessing the validity of defendant's "separate status").

[40]    Although some district courts have blurred the distinction between alter ego and agency, this Court is not persuaded by that non-binding authority. *See LNC Invs., Inc. v. Banco Central De Nicaragua*, 115 F. Supp. 2d 358, 363 (S.D.N.Y. 2000), *aff'd*, 228 F.3d 423 (2d Cir. 2000) (per curiam); *Kashfi v. Phibro-Salomon, Inc.*, 628 F. Supp. 727, 735 (S.D.N.Y. 1986) (citing *Fidenas A.G. v. Honeywell, Inc.*, 501 F. Supp. 1029, 1037 (S.D.N.Y. 1980)). *See also In re Parmalat Secs. Litig.*, 501 F. Supp. 2d 560, 588 n.149 (S.D.N.Y. 2007) (noting the conflict between courts that have conflated the standards and those that have not and holding that plaintiffs failed to state a claim under either standard).

[41]    *EM Ltd. v. Republic of Argentina*, 473 F.3d 463, 479 (2d Cir. 2007).

corporations would serve little function if they were not able to hire agents or independent contractors. Given the convergence of interests between a parent company and a subsidiary, as well as the limitation on the direct operation of foreign corporations in many nations, the use of a foreign subsidiary as an agent is a widely-utilized business strategy.[42] Therefore, it is not reasonable to apply a presumption against vicarious liability to a corporation, even when the alleged agent is another corporation in which the purported principal holds stock. This Court will continue to apply the ordinary federal common law test for agency in this litigation.

### 3.    Application of the Standard

Even conceding – for the sake of argument – that the Court determined the proper standard for vicarious liability between a parent company and a subsidiary, defendants argue that plaintiffs have not advanced allegations concerning agency with sufficient specificity and plausibility to survive a motion to dismiss. As defendants have not established that this Court neglected to address either binding precedent or pertinent facts, it serves no purpose for this Court to

---

[42]    *See* Kojo Yelpaala, *Strategy and Planning in Global Product Distribution – Beyond the Distribution Contract*, 25 Law & Pol'y Int'l Bus. 839, 881-84 (1994). *See also id.* at 871 n.101 (discussing regulation by numerous nations of the "conditions under which foreign corporations may do business").

reassess the same allegations against the same standard discussed in the April 8th opinion. The *Ntsebeza* plaintiffs' agency allegations are sufficient to survive a motion to dismiss.

## IV.   CONCLUSION

For the foregoing reasons, defendants' motion for reconsideration is denied. The Clerk of the Court is ordered to close this motion (02 MDL 1499, No. 143; 02 Civ. 4712, No. 94; 02 Civ. 6218, No. 138; 03 Civ. 1024, No. 19; and 03 Civ. 4524, No. 62).

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            May 27, 2009

16

**- Appearances -**

**For Plaintiffs Ntsebeza *et al.*:**

Jay J. Rice, Esq.
Diane E. Sammons, Esq.
Nagel Rice LLP
103 Eisenhower Parkway
Roseland, New Jersey 07068
(973) 618-0400

Tyler R. Giannini, Esq.
Susan H. Farbstein, Esq.
International Human Rights Clinic
Harvard Law School
Pound Hall Room 401
1563 Massachusetts Avenue
Cambridge, Massachusetts 02138
(617) 495-9362

Helen I. Zeldes, Esq.
Zeldes & Haeggquist, LLP
655 West Broadway, Suite 1410
San Diego, California 92101
(619) 995-8218

Paul L. Hoffman, Esq.
Schonbrun DeSimone Seplow Harris
   & Hoffman
723 Ocean Front Walk
Venice, California 90291
(310) 396-0731

Judith Brown Chomsky, Esq.
Law Offices of Judith Brown
Chomsky
P.O. Box 29726
Elkins Park, PA 19027
(215) 782-8367

**For Plaintiffs Balintulo *et al.*:**

Michael D. Hausfeld, Esq.
Hausfeld LLP
1700 K Street, NW, Suite 650
Washington, DC 20006
(202) 579-1089

Steig D. Olson, Esq.
Hausfeld LLP
11 Broadway, Suite 615
New York, New York 10004
(212) 830-9850

Matt Schultz, Esq.
Levin Papantonio Thomas Mitchell
    Echsner & Proctor, P.A.
316 South Baylen Street, Suite 600
Pensacola, Florida 32502
(850) 435-7140

Robert G. Kerrigan, Esq.
Kerrigan, Estess, Rankin & McLeod,
    LLP
627 East Government Street
Pensacola, Florida 32502
(850) 444-4402

**For Defendant International Business Machines Corp.:**

Keith R. Hummel, Esq.
Cravath, Swaine & Moore LLP
825 Eighth Avenue
New York, New York 10019
(212) 474-1000

**For Defendant General Motors Corp.:**

Jayant W. Tambe, Esq.
Robert S. Walker, Esq.
Jones Day
222 East 41st Street
New York, New York 10017
(212) 326-3939

**For Defendant Fujitsu Limited:**

Mark D. McPherson, Esq.
Michael Gerard, Esq.
Morrison & Foerster LLP
1290 Avenue of the Americas
New York, New York 10104
(212) 468-8000

**For Defendant Ford Motor Company:**

John H. Beisner, Esq.
O'Melveny & Myers LLP
1625 I Street, NW
Washington, DC 20006
(202) 383-5300

**For Defendant Daimler AG:**

Jerome S. Hirsch, Esq.
Susan L. Saltzstein, Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
Four Times Square
New York, New York 10036
(212) 735-3000