UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------ X

IN RE SOUTH AFRICAN APARTHEID
LITIGATION

------------------------------------------------------ X

This Document Relates to:

------------------------------------------------------ X

LUNGISILE NTSEBEZA, *et al.*,

        Plaintiffs,

    - against -

FORD MOTOR COMPANY, GENERAL
MOTORS CORPORATION, and
INTERNATIONAL BUSINESS
MACHINES CORPORATION,

        Defendants.

------------------------------------------------------ X

SAKEWE BALINTULO, *et al.*,

        Plaintiffs,

    - against -

FORD MOTOR COMPANY, GENERAL
MOTORS CORPORATION, and
INTERNATIONAL BUSINESS
MACHINES CORPORATION,

        Defendants.

------------------------------------------------------ X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 4/17/14

OPINION AND ORDER

02 MDL 1499 (SAS)

02 Civ. 4712 (SAS)
02 Civ. 6218 (SAS)
03 Civ. 1024 (SAS)

03 Civ. 4524 (SAS)

1

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

"*Given that the law of every jurisdiction in the United States and of every civilized nation, and the law of numerous international treaties, provide that corporations are responsible for their torts, it would create a bizarre anomaly to immunize corporations from liability for the conduct of their agents in lawsuits brought for shockingly egregious violations of universally recognized principles of international law.*" – Judge Judith W. Rogers, D.C. Circuit[1]

"*It is neither surprising nor significant that corporate liability hasn't figured in prosecutions of war criminals and other violators of customary international law. That doesn't mean that corporations are exempt from that law.*" – Judge Richard Posner, Seventh Circuit[2]

## I.     INTRODUCTION

This case arises out of allegations that various corporations aided and abetted violations of customary international law committed by the South African apartheid regime.[3]   The remaining plaintiffs are members of two putative classes of black South Africans who were victims of apartheid-era violence and discrimination.   Plaintiffs seek relief under the Alien Tort Statute ("ATS"), which

---

[1]      *Doe v. Exxon Mobil Corp.,* 654 F.3d 11, 57 (D.C. Cir. 2011), *vacated on other grounds*, 527 Fed. Appx. 7 (D.C. Cir. 2013) (quotations omitted).

[2]      *Flomo v. Firestone Natural Rubber Co.*, 643 F.3d 1013, 1019 (7th Cir. 2011).

[3]      The lengthy and complicated factual and procedural history of this action, which started with more than a dozen distinct cases of which two still remain, is summarized in *In re South African Apartheid Litig.*, 617 F. Supp. 2d 228, 241-45  (S.D.N.Y. 2009) and *Balintulo v. Daimler AG*, 727 F.3d 174, 182-85 (2d Cir. 2013).

confers federal jurisdiction over "any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States."[4]  The remaining defendants – Ford Motor Company ("Ford"), General Motors Corporation ("GM") and International Business Machines Corporation ("IBM") – are American corporations accused of aiding and abetting violations of the ATS by manufacturing military vehicles and computers for South African security forces.

## II.    BACKGROUND

On April 8, 2009, I granted several defendants' motions to dismiss, but ruled that plaintiffs may proceed against the other defendants named above, as well as Rheimattal AG and Daimler AG (the "April 8 Opinion and Order").  On August 14, 2009, defendants sought a writ of mandamus in the United States Court of Appeals for the Second Circuit to obtain interlocutory review of certain issues in the April 8 Opinion and Order.

On September 17, 2010, while the Second Circuit's decision in this case was pending, another panel of the Second Circuit issued a split decision in *Kiobel v. Royal Dutch Petroleum Co.* ("*Kiobel I*").  In the majority opinion written by Judge Jose Cabranes, the court held that the ATS does not confer jurisdiction over claims against corporations, and dismissed the ATS claims of Nigerian

---

[4]        28 U.S.C. § 1350.

3

nationals who alleged that various corporations aided and abetted customary law violations in Nigeria.[5]

On February 28, 2012, the United States Supreme Court granted certiorari on the question of corporate liability under the ATS and heard oral arguments.[6] After oral arguments, the Court directed the parties to file supplemental briefing on a second question – "whether and under what circumstances the ATS allows courts to recognize a cause of action for violations of the law of nations occurring" outside the United States.[7] On October 1, 2012, the Court heard oral arguments again. On April 17, 2013, the Supreme Court issued an opinion affirming the Second Circuit's judgment ("*Kiobel II*"). However, it decided the case "based on . . . the second question" and ruled that the "presumption against extraterritoriality applies to claims under the ATS."[8] The Court did not address the issue of corporate liability under the ATS.

The present case remained unresolved in the Second Circuit while the

---

[5]     *See* 621 F.3d 111, 148 (2d Cir. 2010) ("*Kiobel I*") (Cabranes, J. and Jacobs, C.J.) (Leval, J. concurring in the judgment of the court to dismiss the complaint but filing separate opinion accepting corporate liability under the ATS).

[6]     *See* 132 S. Ct. 472 (2011).

[7]     132 S. Ct. 1738 (2012).

[8]     *Kiobel v. Royal Dutch Petroleum Co.*, 133 S. Ct. 1659, 1663 (2012) ("*Kiobel II*").

4

Supreme Court's decision in *Kiobel II* was pending. On April 19, 2013, two days after *Kiobel II*, the Second Circuit directed the parties in this case to provide supplemental briefing on the impact of the Supreme Court's decision. On August 21, 2013, the court denied defendants' request for a writ of mandamus and remanded to the district court. The court stated that because "[t]he opinion of the Supreme Court in *Kiobel* [*II*] plainly bar[red] common-law suits like this one, alleging violations of customary international law based solely on conduct occurring abroad, . . . defendants will be able to obtain . . . dismissal of all claims . . . through a motion for judgment on the pleadings."[9] On November 7, 2013, the court denied plaintiffs' petition for panel rehearing and rehearing en banc.

Following denial of en banc review, the parties submitted several letters to this court.[10] Defendants asked the court to enter judgment in their favor based on the Second Circuit's directive, and based on their view that there is no corporate liability for ATS claims in the Second Circuit after *Kiobel I*. Plaintiffs sought leave to amend their complaint, arguing that the Second Circuit's decision was based on a complaint drafted before *Kiobel II* and that plaintiffs are entitled to an opportunity to allege additional facts that might show that some of the alleged

[9]     *Balintulo*, 727 F.3d at 182.

[10]     These letters are summarized in *In re South African Apartheid Litig.*, No. 02 MDL 1499, 2013 WL 6813877, at *1-2 (Dec. 26, 2013).

wrongful conduct "'touch[es] and concern[s]'" the United States with "'sufficient force'" to overcome the presumption against extraterritorial application of the ATS.[11]  Plaintiffs also maintained that corporations are proper defendants because the Supreme Court's decision in *Kiobel II* implicitly overturned the Second Circuit's decision in *Kiobel I* finding no corporate liability under the ATS.[12]

On December 26, 2013, I dismissed the remaining foreign defendants – Rheimattal AG and Daimler AG – because "plaintiffs have failed to show that they could plausibly plead that the[ir] actions . . . touch and concern the United States with sufficient force to rebut the presumption against the extraterritorial reach of the ATS."[13]  I ordered the remaining parties to fully brief the question of whether corporations can be held liable under the ATS following the Supreme Court's decision in *Kiobel II*.[14]  That issue is the subject of this Opinion and Order.

## III.  DISCUSSION

### A.  The Question of Corporate Liability for ATS Claims Remains Open in the Second Circuit

---

[11]    11/26/13 Letter from Diane E. Sammons, counsel for plaintiffs to the Court, at 2 (quoting *Kiobel II*, 133 S. Ct. at 1669).

[12]    *See id.* at 1-2.

[13]    *Id*. at 2.

[14]    *See id*.

The Supreme Court did not reach the issue of corporate liability in *Kiobel II*. The parties strongly disagree about whether *Kiobel I* remains binding law. Plaintiffs argue that the Supreme Court's decision in *Kiobel II* "directly conflicts" with and "casts serious doubts on the viability" of *Kiobel I*.[15] Plaintiffs maintain that "in reaching the merits issue of extraterritoriality . . . the Supreme Court took subject matter jurisdiction over the corporate defendant . . . which disregarded and contradicted the core holding of *Kiobel I*."[16] Plaintiffs further contend that *Kiobel II* "elucidates its intention to allow claims against corporations to proceed" by stating in dicta that "mere corporate presence" cannot suffice to overcome the presumption against extraterritoriality, suggesting that corporations *can* be liable under the ATS upon a showing sufficient to overcome the presumption against extraterritoriality.[17]

Defendants disagree with plaintiffs' argument that the Supreme Court decided extraterritoriality as a merits question. In sum, defendants contend that

---

[15]     1/24/14 Plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion for an Order Finding Corporate Liability Under the Alien Tort Statute ("Pl. Mem."), at 5.

[16]     *Id*.

[17]     2/28/14 Plaintiffs' Reply Memorandum of Law in Support of Plaintiffs' Motion for an Order Finding Corporate Liability Under the Alien Tort Statute, at 5.

"[t]he Supreme Court's express refusal to reach [the] issue [of corporate liability] cannot cast doubt on the lower court's ruling on that issue."[18]  Rather, "the Court's decision to affirm on alternative grounds leaves the unaddressed holding intact."[19]

### 1.    *Kiobel II*

Although the Supreme Court initially granted certiorari and heard oral argument on the issue of corporate liability, *Kiobel II* makes no mention of the issue.  Rather, the Court "conclude[d] that the presumption against extraterritor[ial] [application of American laws] applies to claims under the ATS" and is not rebutted by the text, history or purposes of the statute.[20]  The Court ruled that the presumption against extraterritorial application is so weighty that "even where [ATS] claims touch and concern the territory of the United States, they must do so with sufficient force to displace [it]."[21]  The Court clarified that because "[c]orporations are often present in many countries, . . . it would reach too far to say that mere corporate presence suffices" to overcome the presumption.[22]

---

[18]    2/14/14 Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for an Order Finding Corporate Liability Under the Alien Tort Statute ("Def. Opp."), at 7.

[19]    *Id.*

[20]    *See Kiobel II*, 133 S. Ct. at 1669.

[21]    *Id*.

[22]    *Id*.

### 2. Subsequent Case Law

#### a. Supreme Court

On January 14, 2014, the Supreme Court issued an opinion in *Daimler AG v. Bauman*, an ATS case arising from allegations that Daimler "collaborated with state security forces to kidnap, detain, torture, and kill" plaintiffs or plaintiffs' families during Argentina's "Dirty War" of the late 1970s and early 1980s.[23] The Court concluded that Daimler's contacts with California were insufficient to subject it to personal jurisdiction under California's long-arm statute, because a corporation's "'affiliations with the State' must be 'so continuous and systematic' as to render [it] essentially at home in the forum State."[24] While *Daimler* noted that plaintiffs' ATS claims were "infirm" in light of *Kiobel II*'s holding on extraterritoriality, the Court made no reference to corporate liability, despite addressing the question of personal jurisdiction over a corporation in an ATS case.[25]

#### b. Second Circuit

The Second Circuit has addressed *Kiobel II*'s impact on corporate

---

[23]    134 S. Ct. 746, 751 (2014).

[24]    *Id*. at 761 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011)(other quotations omitted)).

[25]    *Id*. at 763.

liability under the ATS on two occasions. On October 18, 2013, Judge Robert Sack noted in *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL* that the court had anticipated "'affirm[ing] the dismissal of [plaintiffs'] ATS claims' based on our conclusion in *Kiobel* [*I*] that the ATS does not provide subject matter jurisdiction over corporate defendants for violations of customary international law."[26] However, because the Supreme Court "affirmed [*Kiobel*] . . . on different grounds . . . . [and] did not directly address the question of corporate liability under the ATS," the *Licci* court instead remanded to "the district court to address this issue in the first instance."[27]

On February 10, 2014, the Second Circuit issued a decision in *Chowdhury v. Worldtel Bangladesh Holding, Ltd.* dismissing plaintiffs' ATS claims against the defendant corporation because "the claims alleged . . . involve[d] conduct that took place entirely in Bangladesh."[28] In footnote 6 of the majority opinion written by Judge Cabranes, the author of *Kiobel I*, the court remarked that "[p]laintiff's claims under the ATS . . . encounter a second obstacle [because] the Supreme Court's decision in *Kiobel* did not disturb the precedent of

---

[26]     732 F.3d 161, 174 (2d Cir. 2013) (quoting *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F. 3d 50, 73 (2d Cir. 2012)).

[27]     *Id.*

[28]     No. 09-4483, 2014 WL 503037, at *12 (2d Cir. Feb. 10, 2014).

this Circuit that corporate liability is not . . . currently actionable under the ATS."[29]

But in footnote 2 of the concurring opinion, Judge Rosemary Pooler clarified that

footnote 6 "is not pertinent to our decision and thus is dicta."[30]  Judge Pooler

further noted that "[a]t least one sister circuit has determined that, by not passing

on the question of corporate liability and by making reference to 'mere corporate

presence' in its opinion, the Supreme Court established definitively the possibility

of corporate liability under the ATS."[31]

### c.     Other Federal Courts

Prior to *Kiobel II*, the Seventh, Ninth, Eleventh and D.C. Circuits had

each held that corporations can be found liable under the ATS.[32]  Three of the four

courts of appeal reached their decision *after Kiobel I*, and each vigorously

disagreed with its reasoning.  As Judge Pooler noted in *Chowdhury*, the Ninth

Circuit, the only court of appeals to explicitly address the issue of corporate

---

[29]     *Id*. at *5, n. 6 (citations omitted).

[30]     *Id*. at *10, n. 2 (Pooler, J., concurring).

[31]     *Id*. (citing *Doe I v. Nestle U.S.A., Inc.*, 738 F.3d 1048, 1049 (9th Cir. 2013)).

[32]     *See Flomo*, 643 F.3d at 1021; *Sarei v. Rio Tinto, PLC*, 671 F.3d 736, 764-65 (9th Cir. 2011) (en banc), *vacated on other grounds*, 133 S.Ct. 1995 (2013)*; Exxon,* 654 F.3d at 57; *Romero v. Drummond Co., Inc.*, 552 F.3d 1303, 1315 (11th Cir. 2008).

liability under the ATS after *Kiobel II*, again concluded "that corporations can face liability for claims brought under the Alien Tort Statute."[33]  The court cited *Kiobel II*, noting that the Supreme Court "suggest[ed] in dicta that corporations may be liable under the ATS so long as [the] presumption against extraterritorial application is overcome."[34]

Two other district courts have recently weighed in on this issue.  On August 28, 2013, before the Second Circuit's decisions in *Licci* and *Chowdhury*, a court in the Southern District of New York dismissed plaintiffs' ATS claims against a Ukrainian bank, citing *Kiobel I* as binding law.[35]  In that case, the court rejected plaintiffs' argument that "because the Supreme Court did not expressly foreclose corporate liability, their ATS claim against [the] bank may proceed."[36]  On February 24, 2014, a court in the District of Maryland noted that it "harbors doubt that corporations are immune under the ATS [following *Kiobel II*]" but "refrain[ed] from addressing the issue" because there were other grounds for

---

[33]     *Nestle*, 738 F.3d at 1049.

[34]     *Id*.

[35]     *See Tymoshenko v. Firtash*, No. 11 Civ. 2794, 2013 WL 4564646, at *3 (S.D.N.Y. Aug. 28, 2013).

[36]     *Id*.

dismissal.[37]

### 3. Impact of Intervening Case Law

Lower courts are bound by Second Circuit precedent "unless it is expressly or implicitly overruled" by the Supreme Court or an en banc panel of the Second Circuit.[38] Courts have interpreted this to mean that a decision of the Second Circuit is binding "'unless it has been called into question by an intervening Supreme Court decision or by one of [the Second Circuit] sitting *in banc*'" or "'unless and until its rationale is overruled, implicitly or expressly, by the Supreme Court, or [the Second Circuit] court *in banc*.'"[39]

The Supreme Court's opinions in *Kiobel II* and *Daimler* directly undermine the central holding of *Kiobel I* – that corporations cannot be held liable for claims brought under the ATS. The opinions explicitly recognize that

---

[37]     *Du Daobin v. Cisco Systems, Inc.*, No. 11 Civ. 1538, 2014 WL 769095, at *8 (D. Md. Feb. 24, 2014).

[38]     *World Wrestling Entm't. Inc. v. Jakks Pac., Inc.*, 425 F. Supp. 2d 484, 499 (S.D.N.Y. 2006). The "law of the case" doctrine is not at issue here because the Second Circuit's August 21, 2013 order made no reference to corporate liability. Instead, it concluded that after *Kiobel II*, "claims under the ATS cannot be brought for violations of the law of nations occurring within the territory of a sovereign other than the United States." *Balintulo*, 727 F.3d at 189.

[39]     *United States v. Agrawal*, 726 F3d 235, 269 (2d Cir. 2013) (quoting *United States v. Santiago*, 268 F.3d 151, 154 (2d Cir. 2001) and *In re Sokolowski*, 205 F.3d 532, 535 (2d Cir. 2000)).

13

corporate presence alone is insufficient to overcome the presumption against extraterritoriality or to permit a court to exercise personal jurisdiction over a defendant in an ATS case, respectively. By necessity, that recognition implies that corporate presence *plus* additional factors can suffice under either holding.

The standards laid out in *Kiobel* and *Daimler* for overcoming the presumption against territoriality and exercising personal jurisdiction under a long-arm statute are stringent. They may be difficult to meet in all but the most extraordinary cases.[40] But the Supreme Court has now written two opinions contemplating that certain factors in combination with corporate presence could overcome the presumption against extraterritoriality or permit a court to exercise personal jurisdiction over a foreign corporation in an ATS case. This language makes no sense if a corporation is immune from ATS suits as a matter of law. The Supreme Court's opinions in *Kiobel II* and *Daimler* cannot be squared with *Kiobel I*'s rationale.

The Second Circuit panel in *Licci* and Judge Pooler's concurrence in

---

[40]     "'The presumption against extraterritorial application would be a craven watchdog indeed if it retreated to its kennel whenever *some* domestic activity is involved in the case.'" *Kiobel II*, 133 S. Ct. at 1670 (Alito, J., concurring) (quoting *Morrison v. National Australia Bank Ltd.*, 130 S. Ct. 2869, 2884 (2010)) (emphasis in original). Justice Alito further proposed that a defendant's domestic conduct must itself "violate an international law norm" in order to overcome the presumption against extraterritoriality.

*Chowdhury* recognized the possibility that *Kiobel II* has left the issue of corporate liability open in the Second Circuit. Defendants argue that the *Licci* court remanded the question of corporate liability "because the issue had not been briefed on appeal, and because dismissing the ATS claim would not have disposed of the case . . . since other non-ATS claims would remain."[41] But *Kiobel I* is clear and unambiguous as to the question of corporate liability. If the *Licci* panel found *Kiobel I* binding, it would have resolved the question immediately without further briefing. The argument that the Second Circuit would remand issues governed by controlling law because other non-ATS claims remained defies logic. The court's decision in *Licci* only makes sense if that panel no longer considered *Kiobel I* to be binding law.[42]

While the district court in *Tymoshenko* treated *Kiobel I* as binding law, that decision was reached before *Licci* and before Judge Pooler's concurrence in *Chowdhury* suggested that the Supreme Court has embraced corporate liability under the ATS. The Ninth Circuit reached the same conclusion in *Doe I v.*

---

[41] Def. Mem. at 13.

[42] The issue has yet to be remanded to the district court because plaintiffs' motions to sever claims against one of the defendants, and for en banc reconsideration of the Second Circuit's holding on an unrelated choice of law question, remain pending in the Second Circuit.

*Nestle.*[43]  For these reasons, I conclude that corporate liability for claims brought under the ATS is an open question in the Second Circuit and I will address the issue in the first instance.

## B.     Corporations Are Liable Under the ATS

In my April 8 Opinion and Order, I concluded that "corporations are liable in the same manner as natural persons for torts in violation of the law of nations" based on the fact that "[o]n at least nine separate occasions, the Second Circuit has addressed AT[S] cases against corporations without ever hinting –

---

[43]     Plaintiffs have also argued that because the Supreme Court considered extraterritoriality a merits issue in *Morrison*, it must have considered extraterritoriality a merits issue in *Kiobel II* as well.  Therefore, the Court must have accepted jurisdiction over the corporate defendants in order to reach the merits question of extraterritoriality.  *See* Pl. Mem. at 8-11.  But the complex statutory scheme at issue in *Morrison* – the Securities Exchange Act of 1934 – is entirely different from the ATS, which merely confers federal jurisdiction over certain tort claims committed in violation of "the law of nations" or a "treaty of the United States."  Nothing in *Morrison* suggests that the Supreme Court intended extraterritoriality to be a merits question in every statutory scheme, especially for statutes like the ATS which the Court has repeatedly characterized as "strictly jurisdictional."  *Sosa v. Alvarez-Machain*, 542 U.S. 692, 713 (2004).  Further, *Kiobel II* affirmed, though on alternate grounds, the Second Circuit's judgment that federal courts had no subject-matter jurisdiction over the ATS claim.  This is strong evidence that the Supreme Court considered extraterritoriality to be a jurisdictional issue under the ATS.  But because I conclude that corporate liability under the ATS remains an open question in this Circuit for other reasons, I need not determine whether extraterritoriality is a merits issue for purposes of the ATS.

much less holding – that such cases are barred."[44]

Nonetheless, and despite the unbroken line of controlling precedent, the Second Circuit reached the opposite conclusion just eighteen months later in *Kiobel I*. But *Kiobel I* is a stark outlier. It is the only opinion by a federal court of appeals, before and after *Kiobel II*, to determine that there is no corporate liability under the ATS. As discussed above, *Kiobel II* either implicitly accepts corporate liability under the ATS or, at the very least, undercuts *Kiobel I*'s rationale and re-opens the question in this Circuit. For the following reasons, I find that corporations may be held liable for claims brought under the ATS.

The ATS, enacted as part of the Judiciary Act of 1789, confers federal jurisdiction over "any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States." "[B]y its terms [the ATS] does not distinguish among classes of defendants."[45]

---

[44] *In re South African Apartheid Litig.*, 617 F. Supp. 2d at 254 (citations omitted).

[45] *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 438 (1989). As plaintiffs stress, "other sections of the First Judiciary Act . . . did restrict the universe of defendants." Pl. Mem. at 14 (citing An Act to Establish the Judicial Courts of the United States, ch. 20, § 9, 1 Stat. 73, 76-77 (1789) (limiting defendants to "consuls or vice-consuls")). Courts have noted that the Judiciary Act read as a whole "evidences that the First Congress knew how to limit, or deny altogether, subject matter jurisdiction over a class of claims." *Exxon,* 654 F.3d at 46.

In *Sosa v. Alvarez-Machain*, the Supreme Court set forth the standard by which federal courts should analyze whether to exercise jurisdiction over a potential claim under the ATS:

> [F]ederal courts should not recognize private claims under federal common law for violations of any international law norm with less definite content and acceptance among civilized nations than the historical paradigms familiar when [the ATS] was enacted. . . . 'Actionable violations of international law must be of a norm that is specific, universal, and obligatory.' And the determination whether a norm is sufficiently definite to support a cause of action should (and, indeed, inevitably must) involve an element of judgment about the practical consequences of making that cause available to litigants in the federal courts.'[46]

In *Kiobel I*, the Second Circuit concluded that because the ATS "does not specify who is liable . . . for a 'violation of the law of nations,' it leaves the question of the nature and scope of liability – who is liable for what – to customary international law."[47] The court concluded that because no corporation has ever been held liable, in either a civil or criminal case, for violations of international norms, customary international law "has not to date recognized liability for corporations that violate its norms."[48] Thus, the court held that the scope of

---

[46] *Sosa*, 542 U.S. at 732-33 (quoting *In re Estate of Marcos Human Rights Litig.*, 25 F.3d 1467, 1475 (9th Cir. 1994)).

[47] *Kiobel I*, 621 F.3d 111, 133 (2010).

[48] *Id.* at 125.

liability under the ATS does not encompass corporations "for now, and for the foreseeable future."[49]

But *Kiobel I* misses a key "distinction between a principle of [a] law . . . and the means of enforcing it."[50]  Courts look to customary international law to determine whether the alleged conduct violates a definite and universal international norm necessary to sustain an ATS action after *Sosa*.  However, the question of *who* can be held liable for a violation of a norm requires a determination of the means of enforcement – or the remedy – for that violation, rather than the substantive obligations established by the norm.  This is an issue governed by federal common law.  "By way of example, in legal parlance one does not refer to the tort of 'corporate battery' as a cause of action.  The cause of action is battery; agency law determines whether a principal will pay damages for the battery committed by the principal's agent."[51]  In other words, "[i]nternational law imposes substantive obligations and the individual nations decide how to enforce them," including whether, for example, to hold a corporation responsible for the

---

[49]     *Id*. at 149.

[50]     *Flomo*, 643 F.3d at 1019.

[51]     *Exxon*, 654 F.3d at 41.

conduct of its agents.[52]

The majority in *Kiobel I* relies heavily on footnote 20 of the Supreme Court's opinion in *Sosa* as support for its conclusion that the Supreme Court intended the issue of corporate liability to be determined by customary international law.  But that reliance is misplaced.  Footnote 20 states in full:

> A related consideration [to determining whether there is a viable cause of action under the ATS] is whether international law extends the scope of liability for a violation of a given norm to the perpetrator being sued, if the defendant is a private actor such as a corporation or individual. *Compare Tel–Oren v. Libyan Arab Republic*, 726 F.2d 774, 791–795 (D.C. Cir. 1984) (Edwards, J., concurring) (insufficient consensus in 1984 that torture by private actors violates international law), with *Kadic v. Karadzíc*, 70 F.3d 232, 239–241 (2d Cir. 1995) (sufficient consensus in 1995 that genocide by private actors violates international law).[53]

At first glance, footnote 20 appears to suggest that corporate or individual liability is a substantive element of an international norm.  But the citations in footnote 20 make clear that the Supreme Court is referring to the possibility that customary international law may consider some norms to be actionable only when violated by the state, as opposed to private actors.   As Judge Pierre Leval noted in his concurring opinion in *Kiobel I*, "the *Sosa* footnote refers to the concern . . . that some forms of noxious conduct are violations of the law of

---

[52]     *Flomo*, 643 F.3d at 1020.

[53]     *Sosa*, 542 U.S. at 733, n.20.

nations when done by or on behalf of a State, but not when done by a private actor independently of a state. . . ."[54] "Far from implying that natural persons and corporations are treated *differently* for purposes of civil liability under the ATS, the intended inference of the footnote is that they are treated *identically*."[55]

"*Sosa* instructs that the *substantive content* of the common law causes of action that courts recognize in ATS cases must have its source in customary international law."[56] Whether conduct requires state action in order to violate the law of nations is one such substantive question to be determined by customary international law under *Sosa*. But customary international law only establishes norms of conduct, not the available *remedies* for violations of those norms in domestic courts.[57] By passing the ATS, Congress created an action in tort for violations of the law of nations. A federal court deciding a case under the ATS must decide whether corporations are liable for the tortious conduct of their agents

---

[54]     *Kiobel I*, 621 F.3d at 165 (Leval, J., concurring).

[55]     *Id.* (emphasis in original).

[56]     *Exxon*, 654 F.3d at 41 (emphasis added).

[57]     *See id.* at 42 ("The fact that the law of nations provides no private right of action to sue corporations addresses the wrong question and does not demonstrate that corporations are immune from liability under the ATS. There is no right to sue under the law of nations; no right to sue natural persons, juridical entities, or states. There is no right to sue under the law of nations; no right to sue natural persons, juridical entities, or states.")

"by reference to federal common law" governing tort remedies.[58]

The answer to that question is obvious. "[B]y 1789, corporate liability in tort was an accepted principle of tort law in the United States."[59] "Domestic law [continues to] abide[] no distinction between corporate and individual tort liability, and this rule is just as clear in the ATS context as in any other."[60] "[I]n the United States the liability of a corporation for torts committed by its employees in the course of their employment is strict."[61] Even the *Kiobel I* majority admits that "corporations are generally liable in tort under our domestic law."[62]

Defendants concede that "corporations often are subject to tort liability under positive law and state common law," but argue that "they are not subject to liability in the federal common law context[s] most analogous to implied ATS actions," such as actions brought under *Bivens v. Six Unknown Fed. Narcotics Agents*[63] to redress constitutional violations by federal agents, or actions brought

---

[58]     *Id*. at 41.

[59]     *Id.* at 47 (collecting sources).

[60]     *Sarei*, 671 F.3d at 771 (Reinhardt, J., concurring).

[61]     *Flomo*, 643 F.3d at 1020.

[62]     *Kiobel I*, 621 F.3d at 117.

[63]     403 U.S. 388 (1971).

under the Torture Victim Protection Act of 1991 ("TVPA").[64]  Neither analogy is persuasive.

*First*, the Supreme Court held in *Correctional Services Corp. v. Malesko* that corporations are not subject to *Bivens* liability because the core purpose of *Bivens* is to *deter individual officers* from committing constitutional violations.[65]  There is no evidence of such a purpose in the text or history of the ATS.

*Second*, the text and history of the TVPA are relevant but do not support defendants' position.  The TVPA creates an express cause of action under the ATS against "*an individual* who, under actual or apparent authority, or color of law, of any foreign nation . . . subjects an individual to torture [or extrajudicial killing] shall, in a civil action, be liable for damages . . . ."[66]  While the Supreme Court did not affirm that "individual" refers only to natural persons until 2012, the text of the TVPA demonstrates an intent to so limit the universe of defendants.[67]  Yet Congress made no effort to "amend the ATS to preclude corporate liability

---

[64]    Def. Opp. at 16-19.

[65]    *See* 534 U.S. 61, 70 (2001).

[66]    28 U.S.C. § 1350, note § 2(a) (emphasis added).

[67]    *See Mohamad v. Palestinian Authority*, 132 S. Ct. 1702 (2012).  The Supreme Court's opinion was largely a textual analysis.

when it enacted the TVPA's clear restriction to natural person defendants" in 1992, or at any time in the two decades since.[68]  Defendants correctly note that this results in an odd outcome – aliens are "allowed to sue U.S. corporations for alleged acts of torture under the ATS, while U.S. citizens [cannot] sue foreign or U.S. corporations under either statute for the exact same conduct."[69]  This may well be an "inexplicable and indefensible policy result," but it is a result created by Congress, not the courts.[70]

Nothing in the text, history or purposes of the ATS indicates that corporations are immune from liability on the basis of federal common law. However, even if the majority in *Kiobel I* correctly held that the source of corporate liability must be found in customary international law, the court's conclusion that customary international law does not recognize such liability is factually and legally incorrect.

As Judge Richard Posner of the Seventh Circuit noted, "the factual premise of the majority opinion in *Kiobel* [*I*]" – that no corporation has ever been held liable in a civil or criminal case for violations of customary international law

---

[68]     *Sarei*, 671 F. 3d at 785 (McKeown, J., concurring in part and dissenting in part).

[69]     Def. Opp. at 18-19.

[70]     *Id*. at 19.

norms – "is incorrect."[71]  "At the end of the Second World War the allied powers

dissolved German corporations that had assisted the Nazi war effort . . . and did so

on the authority of customary international law."[72]  The Allied Control Council

found that one of these corporations, I.G. Farben, "'knowingly and prominently

engaged in building up and maintaining the German war potential,' and [the

Control Council] ordered the seizure of all [of I.G. Farben's] assets and that some

of them be made 'available for reparations.'"[73]

Even if there have been few civil or criminal cases against

corporations for violations of international norms since then, the conclusion that

there is no norm establishing corporate liability for violations such as genocide or

torture does not follow.[74]  "No principle of domestic or international law supports

the . . . conclusion that the norms enforceable through the ATS – such as the

---

[71]    *Flomo*, 643 F.3d at 1017.

[72]    *Id.* (citing Control Council Law No. 2, "Providing for the Termination
and Liquidation of the Nazi Organizations," Oct. 10, 1945, reprinted in 1
Enactments and Approved Papers of the Control Council and Coordinating
Committee 131 (1945); Control Council Law No. 9, "Providing for the Seizure of
Property Owned by I.G. Farbenindustrie and the Control Thereof," Nov. 30, 1945,
reprinted in 1 Enactments and Approved Papers of the Control Council and
Coordinating Committee 225,
www.loc.gov/rr/frd/Military_Law/enactments-home.html (visited June 24, 2011)).

[73]    *Id.* (quoting Control Council Law No. 9).

[74]    *See id.* at 1017-18.

prohibition by international law of genocide, slavery, war crimes, piracy etc. –

apply only to natural persons and not to corporations."[75]  "[T]he implication that an

actor may avoid liability merely by incorporating is inconsistent with the universal

and absolute nature of the" prohibitions established by international norms.[76]

"There is always a first time for litigation to enforce a norm; there has to be."[77]

There could be many reasons for the lack of actions against

corporations brought before international tribunals.  By way of analogy, there are

many criminal statutes under which corporations are rarely, if ever, prosecuted.[78]

This does not mean that corporations do not fall within the scope of liability.

Similarly, "[t]hat an international tribunal has not yet held a corporation criminally

liable does not mean that an international tribunal could not or would not hold a

corporation criminally liable under customary international law."[79]  Enforcement

---

[75]     *Kiobel I*, 621 F.3d at 153 (Leval J., concurring).

[76]     *Sarei*, 671 F.3d at 760.

[77]     *Flomo*, 643 F.3d at 1017.

[78]     *See, e.g.*, David M. Uhlmann, *Deferred Prosecution and Non-Prosecution Agreements and the Erosion of Corporate Criminal Liability*, 72 Md. L. Rev. 1295 (2013) (discussing lack of corporate prosecutions for work-place accidents and deaths); Pamela H. Bucy, *Why Punish? Trends in Corporate Criminal Prosecutions*, 44 Am. Crim. L. Rev. 1287 (2007) (discussing increased use of deferred and non-prosecution agreements and civil fines as a response to perception that corporate indictments are "overkill").

[79]     *Sarei*, 671 F.3d at 761.

history does not govern the scope of liability. "International law admits to corporate liability, as does domestic law."[80]

## IV.    CONCLUSION

For the foregoing reasons, plaintiffs' motion for an order finding that corporations may be held liable under the ATS is GRANTED. Plaintiffs may move for leave to file an amended complaint against the remaining American defendants. In that motion plaintiffs must make a preliminary showing that they can plausibly plead that those defendants engaged in actions that "touch and concern" the United States with sufficient force to overcome the presumption against the extraterritorial reach of the ATS, and that those defendants acted not only with knowledge but with the purpose to aid and abet the South African regime's tortious conduct as alleged in these complaints.

Plaintiffs' motion and supporting papers must be served no later than May 15, 2014, defendants' response shall be served by June 12, 2014, and plaintiffs' reply shall be served by June 26, 2014. The Clerk of the Court is directed to close this motion (Dkt. Nos. 263 and 264).

---

[80]    *Id.* at 784 (McKeown, J., concurring in part and dissenting in part).

27

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:     New York, New York
          April 17, 2014

## - Appearances -

**For Plaintiffs Ntsebeza** *et al.***:**

Bruce Heller Nagel, Esq.
Jay J. Rice, Esq.
Diane E. Sammons, Esq.
Nagel Rice LLP
103 Eisenhower Parkway
Roseland, New Jersey 07068
(973) 618-0400

Tyler R. Giannini, Esq.
International Human Rights Clinic
Harvard Law School
Pound Hall Room 401
1563 Massachusetts Avenue
Cambridge, Massachusetts 02138
(617) 495-9362

Linda P. Nussbaum, Esq.
Grant & Eisenhofer
485 Lexington Avenue
New York, New York, 10017
(646) 722-8504

Paul L. Hoffman, Esq.
Schonbrun DeSimone Seplow Harris
& Hoffman
723 Ocean Front Walk
Venice, California 90291
(310) 396-0731

Judith Brown Chomsky, Esq.
Law Offices of Judith Brown
Chomsky
Post Office Box 29726
Elkins Park, Pennsylvania 19027

(215) 782-8367

Michael F. Osborne, Esq.
56 Keerom Street
Cape Town 08001
South Africa
558-7221

**For Plaintiffs Balintulo** *et al.***:**
Michael D. Hausfeld, Esq.
Hausfeld LLP
1700 K Street, NW, Suite 650
Washington, DC 20006
(202) 579-1089

Carroll H. Ingram, Esq.
Ingram Wilkinson
P.O. Box 15039
Hattiesburg, Mississippi 39404
(601) 261-1385

**For Defendant International
Business Machines Corp.:**

Keith R. Hummel, Esq.
Cravath, Swaine & Moore LLP
825 Eighth Avenue
New York, New York 10019
(212) 474-1000

**For Defendant General Motors Corp.:**

Jayant W. Tambe, Esq.
Jones Day
222 East 41st Street
New York, New York 10017
(212) 326-3939

**For Defendant Ford Motor Company:**

Jonathan Hacker, Esq.
O'Melveny & Myers LLP
1625 I Street, NW
Washington, DC 20006
(202) 383-5300